## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES** | * | |
| | * | |
| | * | **Criminal No. 25-cr-328-TJK** |
| **v.** | * | |
| | * | |
| **MIKEL REEVES** | * | |
| | * | |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Defendant Mikel Reeves, by and through his attorneys, Nicholas G. Madiou, and Brennan, McKenna & Lawlor, Chtd., respectfully submits this memorandum in support of the arguments to be presented at the time of sentencing.

This memorandum focuses on Mr. Reeves' background -- including his exposure to extreme community violence, his young age, as well as his rehabilitative efforts and compliance with conditions of release. This memorandum also focuses on Mr. Reeves's positive response to this case, including his formal acceptance of responsibility, genuine remorse, and his plans for the future.

Mr. Reeves respectfully asks this Honorable Court to consider this information when fashioning an appropriate sentence in this case. Specifically, Mr. Reeves respectfully argues for a sentence of time served followed by a period of supervised release. Additionally, as to Count Two, Mr. Reeves respectfully asks this Court to impose a sentence under the Youth Rehabilitation Act.

Under the facts and circumstances of this case, such a sentence is sufficient

1

but not greater than necessary.

## Introduction

On August 20, 2025, then 18-year-old Mikel Reeves was arrested and charged via criminal complaint with possession of marijuana with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (B)(1)(D), and possession of a firearm during and in furtherance of a drug trafficking offense, in violation of 18 U.S.C. 924(c).

Despite the requirements of Federal Rule of Criminal Procedure 5(a)(1), which instructs that an arrested person be taken before a magistrate judge "without unnecessary delay," Mr. Reeves did not make his initial appearance in this Court until August 25, 2025 – five days after his arrest. During that time, Mr. Reeves was housed in the D.C. Central Detention Facility without being notified of his charges or having access to a lawyer.

During his initial appearance, the United States moved for Mr. Reeves' pretrial detention. On August 28, 2025, Mr. Reeves appeared before Magistrate Judge G. Michael Harvey for a detention hearing. Over the Government's objection, Magistrate Judge Harvey released Mr. Reeves on pretrial conditions, including GPS location monitoring and home detention in the High Intensity Supervision Program ("HISP").

Mr. Reeves quickly worked to accept responsibility and resolve his case pre-indictment. On October 23, 2025, the United States Attorney for the District of

Columbia filed a two-count criminal information charging Mikel Reeves with: (1) unlawful possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D) ("Count One"); and (2) carrying a pistol without a license in violation of 22 D.C. Code § 4504 ("Count Two").

On November 5, 2025, Mr. Reeves waived indictment and entered into a written plea agreement whereby he pleaded guilty to Counts One and Two of the Information. *See* ECF Dkt. Nos. 20-23.

Sentencing is currently scheduled for February 6, 2026.

At the time of sentencing, Mr. Reeves will be entitled to credit for time served in the amount of 9 days of incarceration in this case. Since the time of his release, Mr. Reeves has complied with all court-ordered conditions under the HISP.

Mr. Reeves respectfully asks this Court to consider the arguments presented here and impose a sentence of time served followed by an appropriate term of supervised release.

## Plea Agreement and Guideline Considerations

According to the plea agreement entered in this case, as well as the presentence investigation report ("PSR"), the parties agree that the applicable sentencing guidelines in this case are calculated as follows:

As to Count One, a base offense level of 6 is applicable because the amount of marijuana involved in this case is less than one kilogram, pursuant to USSG §

2D1.1(a)(1)(5). A two-level enhancement is applicable due to the possession of a firearm, pursuant to USSG § 2D1.1(b)(1). As a result of Mr. Reeves' timely acceptance of responsibility, a two-level reduction applies pursuant to USSG § 3E1.1(a). Therefore, as to Count One the total offense level is 6.

The parties agree that Mr. Reeves is properly assessed zero criminal history points, placing him in Criminal History Category ("CHC") I. Based on a total offense level of 6 and a CHC I, the advisory sentencing guidelines range applicable to Count One is 0 to 6 months of incarceration. Since the applicable guideline range falls within Zone A of the Sentencing Table, a sentence other than imprisonment nonetheless constitutes a guidelines sentence as to Count One.

As to Count Two, the D.C. Guidelines rank the offense conduct in this case in Group 8. Mr. Reeves falls into Criminal History Category A, which results in a guidelines range of 6 to 24 months. A sentence in this range allows for a term of imprisonment but does not require it. A sentence of imprisonment on Count Two can be imposed as a long-split, short-split, or probationary sentence.

For the reasons that follow, Mr. Reeves respectfully asks this Court to impose a period of time served, followed by an appropriate term of supervised release.

## <u>A Reasonable Sentence in this Case</u>

The United States Supreme Court highlighted in *Pepper v. United States*, 562 U.S. 476 (2011), that the cornerstone of federal sentencing is to "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Id.* at 487 (internal quotation marks omitted). That process is embodied in the sentencing system instituted by the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005).

In *Booker*, the Supreme Court held that the mandatory nature of the United States Sentencing Guidelines—particularly 18 U.S.C. Section 3553(b)(1), which purported to make the Guidelines mandatory upon federal courts—was unconstitutional. The Court struck the mandatory language of the statute and held that, although a sentencing court shall consult the guidelines in fashioning a sentence, the court is permitted to "tailor the sentence in light of other statutory concerns as well" with reference to the factors outlined in Section 3553(a). *Id.* at 245.

The core requirement of Section 3553(a) is that the Court impose a sentence "sufficient, but not greater than necessary," to comply with the purposes set forth in Section 3553(a)(2). Those factors to be considered include: (a) the nature and circumstances of the offense and the history and characteristics of the defendant; (b)

the kinds of sentences available; (c) the guideline range; (d) the need to avoid unwarranted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense; to promote respect for the law and to provide just punishment for the offense; to afford adequate deterrence; to protect the public from future crimes and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. Courts are free to disagree, in individual cases and in the exercise of discretion, with the actual range proposed by the guidelines, so long as the ultimate sentence is *reasonable* and carefully supported by reasons tied to the factors enumerated in Section 3553(a).

Consistent with the principle of individualized sentencing is the wide discretion afforded the sentencing judge "in the sources and types of evidence used to assist in determining the kind and extent of punishment to be imposed," in particular, "the fullest information possible concerning the defendant's life and characteristics." *Pepper*, 562 U.S. at 477 ("[p]ermitting sentencing courts to consider the widest possible breadth of information about a defendant ensures that the punishment will suit not merely the offense but the individual defendant").

A. *Childhood & Exposure to Extreme Violence*

Mikel Reeves comes before the Court at the age of 19. He was 18 years old at the time of his arrest. He has no prior criminal convictions and one prior juvenile contact with law enforcement.

Mr. Reeves was born on August 24, 2006 in Washington D.C. His mother and father were never married, and his father has had little to no meaningful involvement in his life. Mr. Reeves is currently unaware of his father's whereabouts and does not speak to him. Mr. Reeves' mother and third-party custodian in this case, Ms. Sheree Battle, is the executive director of the Life Success Center in Washington, D.C., a non-profit organization.

Mr. Reeves is the oldest of his mother's three children. He has two maternal half-siblings. His siblings' father, Javier Reyes, was present in his life since he was three years old. Mr. Reyes helped provide for Mr. Reeves and his siblings as well as his mother. Mr. Reyes served as an important father figure in Mr. Reeves' life. Unfortunately, Mr. Reyes tragically died in 2024 at the age of 35.

Mr. Reeves also shares a close relationship with his maternal grandmother, Annie Battle, who helped provide the family with basic necessities throughout his childhood and played an integral part of his young life. His grandmother currently resides in Rocky Mountain, North Carolina.

While Mr. Reeves was reared in a loving and supportive home, devoid of any

neglect or abuse, the neighborhoods in which he grew up exposed him to extreme community violence. Mr. Reeves lost two close friends to gun violence in 2020 and 2021. Then, in January 2022, at the age of 15, Mr. Reeves was shot in his left thigh and hip. His mother informed the PSR author that Mr. Reeves was on the way home from the store when he was shot in a random act of violence. Mr. Reeves was hospitalized at the Washington Hospital Center before being discharged with a prescription for Percocet.

As science catches up with an increasingly complex combination of societal impacts on development, we now understand that there are significant neurobiological consequences to experiencing traumatic stress as a child and adolescent.

Those who have suffered childhood trauma are often also vulnerable to mental health problems due to difficulty in learning from past experiences. Those with traumatized brains experience faster fear, anxiety, nervousness and hyper-vigilance. Individuals who have experienced trauma like Mr. Reeves has also have smaller, less active frontal lobes, which help people predict behavioral consequences, control impulses and organize daily life. The frontal lobe is not fully developed until between the ages of 24-26. In those who have been traumatized, the underdevelopment combined with trauma impairs one's ability to weigh consequences and control emotions. This can be especially problematic for a person

deciding quickly what to do in response to a perceived threat.  These are biological differences that manifest in the brains of children who have been exposed to trauma.  We are now beginning to realize the science of how our environs shape our brains and future.

Mr. Reeves respectfully presents this difficult history for the Court's consideration at sentencing. While Mr. Reeves has endured great difficulty growing up, he is hopeful for a brighter future. Mr. Reeves remains extremely close to his mother and has worked hard to remain on the right path during his period of pretrial supervision. While Mr. Reeves has not received mental health counseling, he is amenable to such treatment while on supervised release. As such, he respectfully asks this Court to impose mental health counseling as part of the Court's judgment in this case.

B. *Substance Abuse*

It is not surprising, given the traumatic experiences detailed above, that Mr. Reeves has a history of unaddressed substance abuse concerns. As reflected in the PSR, Mr. Reeves used marijuana habitually since he was 15 years old. In addition, as noted above, Mr. Reeves was prescribed Percocet for pain management after being shot in 2022. Following the expiration of that prescription, Mr. Reeves reported buying prescription medication on the street to treat his pain.

Mr. Reeves has never received substance abuse treatment. However, at this

time, Mr. Reeves respectfully asks this Court to order meaningful substance abuse treatment as a condition of his supervised release in this case.

C. *Age at the Time of the Offense*

The crime to which Mr. Reeves pleaded guilty is serious. He has accepted responsibility for his actions and is now a federally convicted felon. Nothing in this argument is meant to minimize the seriousness of this case. However, this Court should also consider Mr. Reeves' age at the time of this offense as a mitigating circumstance in this case. As the Court is aware, emerging neuroscience has established that the line our society draws at age 18 is largely imaginary. Brain development continues until the age of 25. During this period, the emotional center of the brain has developed, making adolescents prone to impulsivity and stimulus seeking. Conversely, the prefrontal cortex, which governs consequential thinking and regulates self-control, has yet to fully develop.[1] "The adolescent brain is often likened to a car with a fully functioning gas pedal (the reward system) but weak brakes (the prefrontal cortex)."[2] The Supreme Court has recognized that

> compared to adults, juveniles have a 'lack of maturity and an underdeveloped sense of responsibility'; they 'are more vulnerable or

---

[1]    The MacArthur Foundation Research Network on Law and Neuroscience, *How Should Justice Policy Treat Young Offenders?*, http://www.lawneuro.org/adol_dev_brief.pdf (last visited February 22, 2022).

[2]    National Institute on Drug Abuse, *Principals of Adolescent Substance Use Disorder Treatment: A Research-Based Guide*, https://www.drugabuse.gov/publications/principles-adolescent-substance-use-disorder-treatment-research-based-guide/introduction (last visited February 22, 2022).

susceptible to negative influences and outside pressures, including peer pressure'; and their characters are 'not as well formed.' […] Accordingly, 'juvenile offenders cannot with reliability be classified among the worst offenders.' A juvenile is not absolved of responsibility for his actions, but his transgression 'is not as morally reprehensible as that of an adult.'[3]

Moreover, the United States Sentencing Commission has recognized that a defendant's youthful age is a factor a sentencing court may consider in imposing a less severe sentence. In what was formerly contained in USSG § 5H1.1 but is now memorialized in Appendix B Part III, the advisory guidelines provided that "[a] downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses. Certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships. In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood. Youthful individuals also are more amenable to rehabilitation." The former § 5H1.1 was repealed as a result of recent amendments to the guidelines that removed departures and policy statements relating to specific personal characteristics. However, the amended Introductory Commentary to Chapter One

---

[3]     *Graham v. Florida*, 560 U.S. 48, 68 (2011) (internal citations omitted).

of the guidelines makes clear that sentencing courts may still consider the factors contained in the repealed departure provisions: "The Commission envisioned and framed this 2025 amendment to be outcome neutral, intending that judges who would have relied upon facts previously identified as a basis for a departure would continue to have the authority to rely upon such facts to impose a sentence outside of the applicable guideline range as a variance under 18 U.S.C. § 3553(a). The removal of departures from the Guidelines Manual does not limit the information courts may consider in imposing a sentence nor does it reflect a view from the Commission that such facts should no longer inform a court for purposes of determining the appropriate sentence."

Mr. Reeves was 18 years old at the time of his arrest in this case and is now 19 years of age. He respectfully asks this Court to consider his youth when imposing a just sentence in this case.

D. *Education and Efforts While on Pre-Trial Release*

According to Ms. Battle, her son studied under an individualized education program ("IEP") while attending junior high school. Ms. Battle candidly acknowledges that she and her son failed to comply with the requirements of the IEP. However, Mr. Reeves remained in school. He attended Wilson High School for his first three years of high school. After he was shot and hospitalized in January 2022, Mr. Reeves stopped going to school due to physical pain and difficultly getting

to and from school and being mobile while at school. Mr. Reeves has now returned

to school. He is currently a student at Kingsman Academy Public Charter School in

Washington, D.C. Mr. Reeves is projected to graduate in June 2026.

Attached to this memorandum as Exhibit A is a letter written by Ms. Marissa

Bowlding from Kingsman Academy. According to Ms. Bowlding,

> Academically, Mikel has been diligently working to complete his
> classes and remains responsive to guidance and support. His
> willingness to stay on track and continue progressing speaks to his
> motivation and desire to improve his circumstances.

> Overall, Mikel has shown growth, accountability, and perseverance
> during his time at Kingsman Academy. I believe he is making genuine
> efforts to better himself, and I am confident he will continue to build on
> the progress he has already made.

Exhibit A. Ms. Bowlding has witnessed Mr. Reeves' "meaningful and measurable

progress." She describes him as "consistently respectful, focused, and cooperative."

Mr. Reeves is grateful for the opportunity to remain on conditions of release

during the pendency of this case. He has taken advantage of that opportunity by

focusing on his education and diligently working toward his goal of graduating from

high school this coming June. He respectfully asks this Court to fashion a sentence

with no additional term of incarceration so that he can continue the positive path he

is on. As reflected in the PSR, Mr. Reeves has complied with every condition of

release set by this Court. He will no doubt do the same while on supervised release

in this case. For these reasons, Mr. Reeves respectfully asks this Court to sentence

him to a period of time served, followed by an appropriate term of supervised release.

E. *Acceptance of Responsibility and Family Support*

Mr. Reeves accepted responsibility before this Court with a genuine desire to atone for his conduct and move past this shameful period of his life. Mr. Reeves hopes that his response to this case has demonstrated that his acceptance of responsibility is genuine. At sentencing, he intends to address this Court to express his remorse for his conduct, the insight he has gained from this case, and his acceptance of responsibility for his role in the offense.

In advance of sentencing, Mr. Reeves has also taken the time to write to this Honorable Court in an effort to share his remorse and the insights he has gained from this difficult time. *See* Exhibit B. Mr. Reeves is truly ashamed of the decisions he made. He is committed to turning this chapter of his life into a valuable learning lesson not only for himself but for his younger siblings. He respectfully asks the Court to consider the genuineness of his remorse, and the sincerity behind his commitment never to engage in such conduct again.

As Mr. Reeves stands before this Court for sentencing, he enjoys the strong support of his mother who has provided him with a loving and supportive home and is committed to helping him positively advance into adulthood. Attached to this memorandum is a letter written by Ms. Battle expressing her love and support for

14

her son. *See* Exhibit C.

Mr. Reeves is a genuinely good person, capable of steering his young life in a positive direction.  Mr. Reeves is motivated to graduate high school this June and plans to pursue training and possibly a career in HVAC. He respectfully asks that this Court consider his early and genuine acceptance of responsibility, as well as the support he enjoys when imposing an appropriate sentence in this case.

F.  *Request For Sentencing Under the Youth Rehabilitation Act*

Mr. Reeves was 18 years old at the time of the offenses for which he comes before the Court for sentencing.  As such, the undersigned respectfully asks the Court to sentence Mr. Reeves on Count Two under the Youth Rehabilitation Act ("YRA") codified at D.C. Code § 24-901 *et seq.*  In evaluating this request, he asks the Court to consider the following pursuant to D.C. Code § 24-903(c)(1).

(a) The youth offender's age at the time of the offense

Mr. Reeves was 18 years old at the time of the offenses, and thus, he falls within the YRA's definition of a "youth offender."  He is now 19 years old.

(b) The nature of the offense

The offense conduct in this case involves the possession of marijuana with the intent to distribute and the unlawful possession of a firearm. Mr. Reeves' conduct was serious, and the possession of a loaded firearm is inherently dangerous. Mr. Reeves' recognizes the seriousness of his conduct. He quickly accepted

responsibility in this case, reaching a plea agreement with the United States prior to being indicted in this matter.

### (c) Prior sentencing under the YRA

Mr. Reeves has not previously received the benefit of the YRA.

### (d) Compliance with rules of the facility to which the defendant has been committed or with the terms of pretrial release

Mr. Reeves has fully complied with this Court's conditions of release and has worked hard to pursue his high school diploma. He is currently on track to graduate in June 2026.

### (e) Participation in rehabilitative District programs

Mr. Reeves has not previously participated in a District rehabilitative program.

### (f) Previous contacts with the juvenile and criminal justice systems

Mr. Reeves has one prior juvenile arrest in 2023 for carrying a pistol without a license. He has no prior juvenile or adult convictions.

### (g) Family and community circumstances at the time of the offense

Mr. Reeves was living with mother at the time of the offense. His mother currently serves as his third-party custodian while under GPS monitoring, home detention and HISP.

### (h) Ability to appreciate the risks and consequences of his conduct

Mr. Reeves is a young and intelligent man who understands the danger and

16

inappropriateness of his conduct. He understands that he needs to change his behavior and is committed to doing so. He is amenable to strict supervision and enrolling in programs to ensure he does not appear before this Court or any other court in the future.

### (i) Reports of physical, mental, or psychiatric examinations

Mr. Reeves has not previously received meaningful mental health treatment. He is amendable to such treatment as deemed appropriate while on supervised release.

### (j) Use of controlled substances

As noted above, Mr. Reeves has a prior substance abuse history that includes marijuana and prescription pain medication abuse. Mr. Reeves is amendable to substance abuse treatment and respectfully asks the Court to order such treatment as part of the judgment in this case.

### (k) Capacity for rehabilitation

Mr. Reeves has the capacity for rehabilitation. He is smart, compassionate, and talented. He has long-term goals and the means and desire to achieve them. He has the support of his family and is committed to making changes. Mr. Reeves plans to obtain his high school diploma in June and wants to pursue vocational training in HVAC.

### (l) Victim impact statement

There is no victim impact statement in this case.

(m)    <u>Other relevant information considered</u>

A sentence in this case under the YRA will serve as motivation for Mr. Reeves to use the probationary period to further put himself in a position to become a productive member of society. While Mr. Reeves will remain a federal felon for the conviction he sustained on Count One, he need not remain a felon as to Count Two.

We respectfully submit that upon consideration of all of the YRA factors, Mr. Reeves should be treated as a youth offender for the purpose of sentencing as to Count Two.  Accordingly, we ask the Court to grant a sentence pursuant to the YRA on Count Two.

## <u>Conclusion</u>

Mr. Reeves understands that the situation he finds himself in is the direct result of his own actions.  However, Mr. Reeves need not be defined by his actions in this case. Based on the foregoing, we respectfully submit that a sentence of time served, followed by a period of supervised release is the appropriate sentence in this case. In addition, Mr. Reeves respectfully asks that he be sentenced under the Youth Rehabilitation Act as to Count Two.

Respectfully submitted,

/s/

_____

Nicholas G. Madiou
Brennan McKenna & Lawlor, Chtd.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
301.474.0044
nmadiou@brennanmckenna.com

## CERTIFICATES OF SERVICE

I HEREBY CERTIFY that on this 2nd day of February, 2026, a copy of the foregoing Memorandum in Aid of Sentencing was delivered via ECF to the Office of the United States Attorney for this District of Columbia.

/s/

_____

Nicholas G. Madiou